1

2

3

4

5

6                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF WASHINGTON

7    TAMARA LEE GARCIA,

8            Plaintiff,                              No.  4:16-CV-05028-RHW

9            v.

10   NANCY A. BERRYHILL                              **ORDER GRANTING
     (PREVIOUSLY CAROLYN W.                          DEFENDANT'S MOTION FOR
11   COLVIN), Acting Commissioner of                 SUMMARY JUDGMENT**
     Social Security,[1]
12
             Defendant.
13

14           Before the Court are the parties' cross-motions for summary judgment, ECF

15   Nos. 17 & 19. Ms. Garcia brings this action seeking judicial review, pursuant to 42

16   U.S.C. § 405(g), of the Commissioner's final decision, which denied her

17   application for Supplemental Security Income under Title XVI of the Social

18   Security Act, 42 U.S.C §1381-1383F. After reviewing the administrative record

19   and briefs filed by the parties, the Court is now fully informed. For the reasons set

20   _____

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

1    forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

2    **DENIES** Ms. Garcia's Motion for Summary Judgment.

## I.    Jurisdiction

4        Ms. Garcia protectively filed for Supplemental Security Income on March 8,

5    2012. AR 12, 138. Her initial alleged onset date was June 17, 1994, AR 12, 138,

6    but at the hearing with the Administrative Law Judge she amended the alleged

7    onset date to March 8, 2012, AR 12, 32, 214. Ms. Garcia's application was initially

8    denied on May 29, 2012, AR 90-93, and on reconsideration on September 19,

9    2012, AR 97-100.

10       A hearing with Administrative Law Judge ("ALJ") Cecilia LaCara occurred

11   on February 27, 2014. AR 26-58. On April 17, 2014, the ALJ issued a decision

12   finding Ms. Garcia ineligible for disability benefits. AR 12-22. The Appeals

13   Council denied Ms. Garcia's request for review on January 20, 2016, AR 1-3,

14   making the ALJ's ruling the "final decision" of the Commissioner.

15       Ms. Garcia timely filed the present action challenging the denial of benefits,

16   on March 15, 2016. ECF No. 3. Accordingly, Ms. Garcia's claims are properly

17   before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

19       The Social Security Act defines disability as the "inability to engage in any

20   substantial gainful activity by reason of any medically determinable physical or

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 2**

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§

404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc.*

*Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here. Ms. Garcia was 35 years old at the alleged date of onset. AR 21, 138, 152. She attended high school through the eighth (AR 156, 238, 267) or ninth grade (AR 79, 230, 275). Ms. Garcia is able to communicate in

English. AR 21, 154. The ALJ found Ms. Garcia to suffer from depression, post-traumatic stress disorder, panic disorder, and polysubstance abuse. AR 14. Ms. Garcia previously worked as a waitress and housekeeper. AR 76, 156, 162, 194. She has a history of drug use including, crack cocaine, ecstasy, LSD, mushrooms, hash, methamphetamine, and marijuana. AR 19, 35-37, 224, 230, 237-38, 274, 298, 310.

## V.    The ALJ's Findings

The ALJ determined that Ms. Garcia was not under a disability within the meaning of the Act from March 8, 2012, her alleged date of onset. AR 22.

**At step one**, the ALJ found that Ms. Garcia had not engaged in substantial gainful activity since March 8, 2012 (citing 20 C.F.R. § 416.971 *et seq.*). AR 14.

**At step two**, the ALJ found Ms. Garcia had the following severe impairments: depression, post-traumatic stress disorder (PTSD), panic disorder, and polysubstance abuse present and not material (citing 20 C.F.R. § 416.920(c)). AR 14.

At **step three**, the ALJ found that Ms. Garcia did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 15-16.

At **step four**, the ALJ found Ms. Garcia had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-

exertional limitations: work is limited to 1 to 3 step tasks; and she can work in a low stress job defined as having only occasional decision making required and changes in the work setting, with only occasional interaction with the public, co-workers, and supervisors. AR 16-21.

The ALJ determined that Ms. Garcia has no past relevant work. AR 21.

At **step five**, the ALJ found that, in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 21-22.

## VI.   Issues for Review

Ms. Garcia argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly discrediting Ms. Garcia's subjective complaint testimony; (2) improperly weighing the medical opinion evidence; and (3) failing to identify jobs, available in significant numbers, that Ms. Garcia could perform despite her functional limitations.

## VII.   Discussion

### A. The ALJ Properly Discounted Ms. Garcia's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence

suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of [her] symptoms only by offering specific, clear, and convincing reasons

for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When

evidence reasonably supports either confirming or reversing the ALJ's decision, the

Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically

determinable impairments could reasonably be expected to produce the symptoms

Ms. Garcia alleges; however, the ALJ determined that Ms. Garcia's statements

regarding intensity, persistence, and limiting effects of the symptoms were not

entirely credible. AR 17.

   **a. Ms. Garcia's daily activities.**

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 9**

The ALJ noted several activities of daily living that are inconsistent with Ms. Garcia's allegations. Activities transferable to a work setting are a proper ground for questioning the credibility of an individual's subjective allegations. *See Molina*, 674 F.3d at 1113 ("[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment").

Ms. Garcia testified that she cannot be around others. AR 38, 170. However, the ALJ noted several inconsistencies with the alleged severity of her disability. In particular, the ALJ noted: Ms. Garcia has two friends she sees occasionally (AR 18, 275); she makes herself go out, and attends some of her children's sport activities (AR 18, 235, 275); she attends drug recovery meetings, drug dependency meetings, and church on Sundays and Tuesdays (AR 18, 47, 230, 235, 275); she attended a barbeque at a friend's house (AR 18, 275); and she is able to use public transportation (AR 18, 273). The ALJ also noted her doctor's records show that she was cooperative, made good eye contact, and had an appropriate affect. AR 17, 233-35, 238, 269-70, 276, 308-09.

Additionally, Ms. Garcia testified that she has disabling difficulty maintaining attention and focus. AR 34-35, 38-39, 175. In contrast, the ALJ noted that Ms. Garcia watches television and uses Facebook (AR 18, 275); she does simple chores like laundry, sweeping, and vacuuming (AR 18, 274-75, 329); she

1    cared for her ailing aunt (AR 18, 48-49); and she was able to complete four hours

2    of mental testing with only one break (AR 16, 277).

3          The ALJ also found that the record demonstrated Ms. Garcia's impairments

4    would not prevent her from working because the record shows she did work during

5    the relevant period. AR 18. The ALJ noted that Ms. Garcia had worked for a friend

6    a few hours a week to earn money and was trying to find a job, and that she may

7    have done work for which she was paid in cash. AR 19, 314.

8          These activities reflect a level of functioning that is inconsistent with Ms.

9    Garcia's claims of disability. The Court does not find the ALJ erred when

10   assessing Ms. Garcia's credibility because her activities of daily living are

11   inconsistent with her alleged severity of her impairments.

12        **b.  Inconsistent statements and less than sincere efforts.**

13        While the ALJ did not directly state that Ms. Garcia was malingering, the

14   ALJ does include references to the record that indicate Ms. Garcia was not putting

15   forth her best effort. AR 18. Specifically the ALJ noted that Ms. Garcia did not put

16   forth maximum effort and was not fully cooperating during her

17   psychological/psychiatric testing which resulted in an invalid profile; Ms. Garcia

18   did not put forth her best effort during her Wechsler Adult Intelligence Scale

19   Fourth Edition testing and provided results of limited validity; and her evaluator

20   stated that her test scores should be interpreted cautiously because of her poor

interest in doing well on tasks, and possibly because of recent involvement with substances. AR 18, 282, 328. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("efforts to impede accurate testing of [] limitations supports the ALJ's determinations as to her lack of credibility").

The ALJ also found that Ms. Garcia gave inconsistent statements about taking her prescribed medication. AR 18. The ALJ noted Ms. Garcia told her case manager, Jacob Spanjer, that she was consistently taking her medications but later reported she frequently forgot to take them (AR 312), she stopped taking all of her medications because she didn't believe they were working (AR 310), and she allowed herself to run out of her medications (AR 309).

Thus, the ALJ did not err when assessing Ms. Garcia's credibility because the ALJ properly found she failed to put forth her best effort and she had provided inconsistent statements.

### c. Failure to treat.

In consideration of Ms. Garcia's credibility, the ALJ noted that she has failed to comply with her treatment. AR 17-19. A claimant's statements may be less credible when treatment is inconsistent with the level of complaints or a claimant is not following treatment prescribed without good reason. *Molina*, 674 F.3d at 1114. When refusing prescribed treatment, the reasons presented for not following the treatment must be related to the mental impairment and not a matter

of personal preference. *Id.* "Unexplained, or inadequately explained, failure to seek treatment . . . can cast doubt on the sincerity of [a] claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ points out that Ms. Garcia has a history of missing appointments and failing to follow through with recommended treatment. AR 17. In particular, the ALJ notes that Ms. Garcia missed multiple appointments with her treating provider, Dr. Zimmerman. AR 17, 309, 315, 325-26. Ms. Garcia thought her therapy did not help, but Dr. Zimmerman noted that she had not really engaged. AR 17, 310. She had been through chemical dependency but did not complete most programs, and she was interested in working with the Division of Vocational Rehabilitation but did not attend the orientation. AR 17-18, 318, 328, 274-75.

Furthermore, the ALJ cited the treatment record, noting that Ms. Garcia was not compliant with taking her medications, and the prescriptions were effective in managing her symptoms when taken. AR 17-18. The record cited by the ALJ directs: Ms. Garcia was started back on medication, she did not return for follow up, she ran out, and she started buying medication off the street (AR 309); "the patient stated she stopped all of the medications because she did not believe it was helping" (AR 310); Ms. Garcia is encouraged to resume taking her medications (AR 317); "she was encouraged to comply with treatment, which has been an issue all along for her" (AR 309); "reports taking medication as prescribed and that a

recent medication change is helping with her mood" (AR 313); Ms. Garcia's "symptoms have decreased…she is taking medications" (AR 324).

The overall record demonstrates that Ms. Garcia has significant unexplained gaps in treatment and she did not follow the prescribed treatment, thus the ALJ did not err in assessing her credibility.

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

**1. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2.  Dr. Gollogly.**

Dr. Vincent Gollogly, PhD, was a reviewing doctor who completed a mental residual functional capacity assessment on September 18, 2012. AR 82-86. Dr. Gollogly determined that Ms. Garcia did have functional limitations but that these limitations did not render her disabled. *Id.* The ALJ afforded great weight to Dr. Gollogly's opinion because it is consistent with mental status testing, and accounts for Ms. Garcia's social limitations. AR 19. Ms. Garcia contends the ALJ erred by not noting or mentioning that Dr. Gollogly offered moderate limitations in various categories and by affording the opinion great weight.

The mental residual functional capacity assessment completed by Dr. Gollogly contains various questions in multiple categories to assist in determining a claimant's ability to perform work activities, followed by "the actual mental residual functional capacity assessment… recorded in the narrative discussion(s) in

the explanation text boxes." AR 82. Notably, agency policy directs that it is the narrative portion written by the doctor that the adjudicators are to use in the assessment of the RFC. Program Operations Manual System (POMS) DI 25020.010(B)(1); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 (9th Cir. 2006) ("The POMS does not have the force of law, but it is persuasive authority."). The ALJ did not reject any portion of Dr. Gollogly's report and assessment and properly relied on the narrative portion in determining Ms. Garcia's RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1005 (9th Cir. 2015).

Ms. Garcia appears to argue the ALJ erred by affording great weight to the opinion of Dr. Gollogly. However, Dr. Gollogly provided his opinion after assessing the medical evidence available, listing Ms. Garcia's limitations, and providing his medical opinion of her conditions. AR 82-86. It is the ALJ's duty to explain why "significant probative evidence has been rejected," rather than explain why it was not. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").

The Court finds that the ALJ did not err in her assessment of Dr. Gollogly's opinion and in affording the opinion great weight.

**3. Dr. Cooper.**

Dr. Cecilia Cooper, PhD, was an examining doctor that completed a psychological evaluation on September 5, 2012. AR 273-84. Dr. Cooper concluded that Ms. Garcia's test scores should be interpreted cautiously because of her poor interest in doing well on tasks and possibly because of recent involvement with substances, but that without the influence of both factors, a cognitive disorder would still be evident, just not to the extreme extent currently reflected. AR 282. She completed a medical source statement, opining that Ms. Garcia could perform tasks involving two- or three-step tasks at a slow pace and that she would have problems with supervisors and co-workers AR 19, 283. This portion of the opinion was afforded great weight. Dr. Cooper also opined in the medical source statement, that Ms. Garcia would have significant difficulty completing more complex instructions; she would do tasks slowly; she would have significant problems with change and with maintaining attention and concentration for extended periods of time; she would not be reliable in responding to normal hazards; and she would

1    require close supervision to ensure she completes tasks as instructed. AR 19-220,

2    283. This portion of the opinion is contradicted by Dr. Gollogly, and was afforded

3    little to no weight by the ALJ. AR 19-20, 79-84.

4          The ALJ states that portion of the opinion is given great weight because it is

5    consistent with Ms. Garcia's contemporaneous mental status testing as well as the

6    longitudinal record, while the remaining portion of the opinion is not. AR 20. In

7    addition, the ALJ noted that Ms. Garcia was able to maintain significantly better

8    attention and concentration than Dr. Cooper alleged. *Id*. Ms. Garcia was able to

9    complete testing that lasted four hours with only one break. AR 20, 277. A

10   discrepancy between a doctor's recorded observations and opinions is a clear and

11   convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427

12   F.3d 1211, 1216 (9th Cir. 2005). Furthermore, in assigning little to no weight to a

13   portion of Dr. Cooper's opinion, the ALJ noted that contrary to part of Dr.

14   Cooper's opinion, Ms. Garcia is not as severely limited as opined and is able to

15   complete simple tasks. AR 20. Demonstrated by Ms. Garcia's ability in her daily

16   living to complete tasks such as household chores and prepare meals. *Id*. The ALJ

17   has also noted that Ms. Garcia tends to her personal hygiene and grooming without

18   assistance, she does her own laundry, and she recently worked for a friend a few

19   hours a week to earn money and was trying to find a job. AR 16, 18, 275-76, 314.

20   An ALJ may properly reject an opinion that provides restrictions that appear

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 18**

1    inconsistent with the claimant's level of activity. *Rollins v. Massanari*, 261 F.3d

2    853, 856 (9th Cir. 2001).

3      In assigning little to no weight to a portion of Dr. Cooper's opinion, the ALJ

4    supported the determination with specific and legitimate reasons supported by

5    substantial evidence in the record. Thus, the ALJ did not err in her consideration of

6    Dr. Cooper's opinion.

7      **4.  Dr. Moon.**

8      Dr. Tae-Im Moon, PhD, was an examining doctor that completed a

9    psychological evaluation for the Washington State Department of Social and

10   Health Services in February 2012. AR 229-32. Following the clinical interview,

11   Dr. Moon opined that Ms. Garcia's ability to work with the public and co-workers

12   and to remember and sustain focus was poor, and that Ms. Garcia would likely

13   have significant difficulty in completing tasks. AR 20, 230.

14     The ALJ afforded the opinion of Dr. Moon little to no weight. AR 20. Ms.

15   Garcia does not state why or how she believes the ALJ erred in assigning little to

16   no weight to the opinion of Dr. Moon, but states that this was an error. The ALJ

17   noted that Dr. Moon's opinion is inconsistent with the record, and that Ms. Garcia,

18   in fact, is able to be around others as evidenced by her attendance in chemical

19   treatment groups and at church. AR 18, 20, 47, 230, 235, 275. Furthermore, the

20   ALJ again noted that Ms. Garcia is actually able to complete tasks as evidenced by

her recent and current level of activity, including her ability to complete household

chores, prepare meals, tend to her personal hygiene and grooming without

assistance, do her laundry, and work for a friend a few hours a week to earn money

and was trying to find a job. AR 16, 18, 20, 274-75, 314, 329. As previously stated,

an ALJ may properly reject an opinion that provides restrictions that appear

inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856.

The opinion of Dr. Moon is contradicted by Dr. Gollogly. AR 77-84. In

assigning little to no weight to Dr. Moon's opinion, the ALJ supported the

determination with specific and legitimate reasons supported by substantial

evidence in the record. Thus, the ALJ did not err in her consideration of Dr.

Moon's opinion.

**5.  Dr. Zimmerman.**

Dr. Laurie Zimmerman, MD, was Ms. Garcia's treating doctor. AR 311-15.

Dr. Zimmerman treated Ms. Garcia five times before the alleged onset date, once

in 2012, three times in 2013, and completed mental medical source statement in

2014. AR 233-38, 308-11, 319-22. In her mental medical source statement,

consisting primarily of a checkbox form, Dr. Zimmerman briefly opined that Ms.

Garcia had difficulty regulating her mood and affect, she was impulsive and easily

angered, she had difficulty following a routine, she did not tolerate being around

other people and could be aggressive. AR 20, 321.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20**

1    Dr. Zimmerman's opinion was afforded little to no weight by the ALJ. AR

2    20. The social limitations given by Dr. Zimmerman were accounted for by the ALJ

3    in limiting Ms. Garcia to occasional contact with others. AR 16-17, 20. Ms. Garcia

4    takes issue with the weight the ALJ afforded the opinions of Dr. Zimmerman, but

5    Ms. Garcia fails to explain why or how the ALJ erred. Nevertheless, this analysis

6    continues. The ALJ gave two proper reasons for discounting Dr. Zimmerman's

7    opinion.

8    First, the ALJ discounted Dr. Zimmerman's opinion because it appears the

9    opinion is quite heavily based on Ms. Garcia's self-reported symptoms, which the

10   ALJ properly determined were not credible. AR 17-20. An ALJ may discount a

11   treating provider's opinion if it is based largely on the claimant's self-reports and

12   not on clinical evidence, and the ALJ finds the claimant not credible. *Ghanim v.*

13   *Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Indeed, Dr. Zimmerman's treatment

14   records of Ms. Garcia are almost entirely based on Ms. Garcia's subjective

15   complaints and reports. AR 233-38, 308-11. In fact, Dr. Zimmerman's objective

16   examination notes largely detail that Ms. Garcia is far better than the severe

17   limitations Dr. Zimmerman assessed. Specifically, Dr. Zimmerman repeatedly

18   notes that Ms. Garcia makes good eye contact, her affect is appropriate, her mood

19   is only somewhat depressed and anxious, there is no evidence of psychosis, her

20   insight and judgment are fair, and there is no evidence of abnormal movements.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21**

1   AR 233-36, 308-11. It was also noted by Dr. Zimmerman that Ms. Garcia appears

2   to be of average intelligence, her speech was mildly pressured but otherwise

3   normal and goal directed, her recent and remote memories were grossly intact, and

4   she was oriented to person, place, time and circumstance. AR 238. "[A]n ALJ need

5   not accept the opinion of a doctor if that opinion is brief, conclusory, and

6   inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216.

7   Additionally, a discrepancy between a doctor's recorded observations and opinions

8   is a clear and convincing reason for not relying on the doctor's opinion. *Id*.

9       Second, the ALJ noted that Ms. Garcia is not as limited as Dr. Zimmerman

10   asserts. The record indicates that Ms. Garcia is able to be around others, evidenced

11   by the fact that she is able to shop, use public transportation, and regularly attends

12   church and support groups. AR 20, 47, 230, 273. An ALJ may properly reject an

13   opinion that provides restrictions that appear inconsistent with the claimant's level

14   of activity. *Rollins*, 261 F.3d at 856.

15       The opinion of Dr. Zimmerman is contradicted by non-examining doctor,

16   Dr. Gollogly. AR 79-84. Additionally, the ALJ explained that Dr. Zimmerman's

17   opinion was based on Ms. Garcia's subjective statements and minimal objective

18   evidence. AR 20. In assigning little to no weight to Dr. Zimmerman's opinion, the

19   ALJ supported the determination with specific and legitimate reasons supported by

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 22**

1  substantial evidence in the record. Thus, the ALJ did not err in her consideration of

2  Dr. Zimmerman's opinion.

3      **6.  Dr. Marks.**

4          Dr. Nora Marks, PhD, was an examining doctor that completed a

5  psychological evaluation for the Washington State Department of Social and

6  Health Services in February 2014. AR 328-33. Dr. Marks opined that Ms. Garcia

7  would likely be an unreliable and difficult employee at this point, but with a period

8  of psychotherapy, medication, and continued abstinence from drug use, she may be

9  able to work in a year or two. AR 20, 330. Dr. Marks also opined that Ms. Garcia

10  would have severe limitations in several areas, including her ability to maintain

11  appropriate behavior in a work setting. AR 20, 331.

12          While the ALJ did not completely discount Dr. Marks' opinion, it was

13  afforded little weight. AR 20. Again, Ms. Garcia takes issue with the weight the

14  ALJ afforded the doctor's opinions, but fails to explain why or how the ALJ erred.

15  Nevertheless, this analysis continues.

16          In discounting the opinion of Dr. Marks, the ALJ notes that the record

17  indicates that the claimant's symptoms improve and stabilize with medication, and

18  the severe limitations assessed by Dr. Marks are unsupported by the record as a

19  whole. AR 20. The treatment record supports the ALJ determination and shows

20  that Ms. Garcia failed to comply with prescribed medication, and that when she

did, her prescribed treatment was effective in managing her symptoms. AR 18, 20.

For example, the record demonstrates: Ms. Garcia was started back on medication,

she did not return for follow up, she ran out, and she started buying medication off

the street (AR 309); "the patient stated she stopped all of the medications because

she did not believe it was helping" (AR 310); "[Ms. Garcia] also does not think

that therapy helped, but she did not really engage" (AR 310); Ms. Garcia "reports

taking medication as prescribed and that a recent medication change is helping

with her mood" (AR 313); Ms. Garcia is encouraged to resume taking her

medications (AR 317); Ms. Garcia's "symptoms have decreased…she is taking

medications" (AR 324). The treatment records contrast directly with Dr. Marks'

evaluation findings.

The opinion of Dr. Marks is contradicted by Dr. Gollogly. AR 79-84. In

assigning little weight to Dr. Marks' opinion, the ALJ supported the determination

with specific and legitimate reasons supported by substantial evidence in the

record. Thus, the Court finds that the ALJ did not err in her consideration of Dr.

Marks' opinion.

**C. The ALJ Properly Identified Jobs Ms. Garcia Could Perform and Did**
   **Not Err in Her Step Five Analysis.**

Step five shifts the burden to the Commissioner to prove that the claimant is

able to perform other work available in significant numbers in the national

economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).  If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Ms. Garcia contends that the ALJ failed to identify jobs, available in significant numbers that Ms. Garcia could perform despite her functional limitations. Specifically, Ms. Garcia briefly states that the hypothetical provided to the vocational expert is incomplete because it fails to take into account additional limitations suggested by Dr. Zimmerman and other psychologists; however, the Court has already found no error in the ALJ's treatment of the doctors' opinions. *See supra* at 14-24. The Court will uphold the ALJ's findings when a claimant attempts to restate the argument that the residual functional capacity finding did not account for all limitations. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

The ALJ properly framed the hypothetical questions addressed to the vocational expert. Additionally, the vocational expert identified jobs in the national economy that exist in significant numbers that match the abilities of Ms. Garcia, given her limitations. Thus, the Court finds the ALJ met her step five burden and did not err in her analysis.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED.**

3. **Judgment shall be entered in favor of Defendant** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 7th day of March, 2017.


*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 26**